**UNITED STATES of America, Plaintiff,**

v.

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

April 29, 1996.

Patrick M. Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney, Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR PRODUCTION OF CLASSIFIED INFORMATION

MATSCH, Chief Judge.

This memorandum opinion addresses the questions raised in the following pleadings:

Docket entry 784  Motion to Require the Government to Produce Exculpatory Evidence to Assist the Defendant, Timothy James McVeigh, in Establishing his Claim that He is Not Guilty of the Offense Charged against Him in the Grand Jury Indictment

Docket entry 785  Brief in Support by Defendant Timothy James McVeigh Regarding Motion to Require Government to Produce Exculpatory Evidence

Docket entry 881  Brief of the United States in Response to Defendant McVeigh's Discovery Report and Motions

Docket entry 1079  Motion for Disclosure of Discoverable and Exculpatory Intelligence Collected by the Central Intelligence Agency, the National Security Agency, the Departments of Justice and State, and Any Other Intelligence Gathering Agencies, Rule 16 Material and Brief in Support [filed by McVeigh]

Docket entry 1080  Defendant McVeigh's Memorandum to the Court Concerning Implementation of the Classified Information Procedures Act

Docket entry 1081  Defendant McVeigh's Reply to the Government's Response to Motion to Produce Exculpatory Evidence and Request for Evidentiary Hearing

Docket entry 1162  Brief of the United States in Response to Defendant McVeigh's Motions Seeking Discovery Under the Classified Information Procedures Act

Docket entry 1171  Defendant McVeigh's Application to Supplement Motion to Require the Government to Produce Exculpatory Evidence

Docket entry 1208  Defendant McVeigh's Response to the Government's Reply to Defendant McVeigh's Motion Seeking Classified Information

Docket entry 1215  Report of the United States Regarding Status of Reciprocal Discovery

Docket entry 1226  Defendant McVeigh's Motion for an Order Allowing Leave to File *Ex Parte, In Camera* and Under Seal the Separately Filed and Sealed Specification of Materiality of Requested Classified Information

Docket entry 1228  Specification of Materiality and Relevance Requesting Classified Information *Ex Parte* (SEALED) by Timothy James McVeigh regarding [1080–1]

Docket entry 1230  McVeigh's Response to the Report of the United States Regarding Status of Reciprocal Discovery

Docket entry 1232 Defendant McVeigh's Proposed Procedure for April 9, 1996, Hearing

Docket entry 1233 Notice of Joinder re: Defendant McVeigh's Response to the Government's Reply to Defendant McVeigh's Motion Seeking Classified Information [filed by Nichols]

Docket entry 1234 Notice of Joinder re: Defendant McVeigh's Memorandum to the Court Concerning Implementation of the Classified Information Procedures Act [filed by Nichols]

Docket entry 1236 Supplement to Motion for Disclosure of Discoverable and Exculpatory Intelligence Collected by the Central Intelligence Agency, the National Security Agency, the Departments of Justice and State, and Any Other Intelligence Gathering Agencies, Rule 16 Material and Brief in Support [filed by McVeigh]

Docket entry 1298 Motion for Order Allowing Leave to File *Ex Parte, In Camera* and Under Seal the Separately Filed and Sealed Supplemental Specification of Materiality of Requested Classified Information by Timothy James McVeigh

Docket entry 1309 Defendant McVeigh's *Ex Parte, In Camera* and Under Seal Supplemental Specification of Materiality of Requested Classified Information (SEALED)

These pleadings raise issues relating to the scope of the discovery rights of the defendants and the duty of disclosure of government counsel under the Fifth and Sixth Amendments to the United States Constitution. Additionally, Timothy McVeigh has moved for production of classified intelligence information, supporting his motion with papers filed under seal to be reviewed *in camera* and *ex parte*. At the hearing held on these motions on April 9, 1996, this court agreed to read that material. Additional exhibits labeled "A" through "F" were submitted at the hearing. On April 25, 1996, defendant McVeigh moved to file *ex parte, in camera* and under seal a supplemental specification of materiality of requested classified information and the motion was granted. All of the sealed material has now been read by the court. No copies were given to counsel for the government or for defendant Terry Nichols. Although Mr. Nichols joined in the motion to implement CIPA, the McVeigh sealed filings are based on his individual interests.

The indictment alleges that persons unknown to the grand jury were members of a conspiracy with these defendants. The prosecution has declined to disclose the identities of any other participants now known to it before trial except as to those whose statements may be offered in evidence under FRE 801(d)(2)(E). Government counsel said at the April 9 hearing that they believe that Timothy McVeigh and Terry Nichols were the "masterminds."

This court has liberally supported Mr. McVeigh's defense team's requests under 21 U.S.C. § 848(q) for funds to pursue an independent investigation. Both the sealed and public filings by Mr. McVeigh's lawyers show that they have vigorously conducted a wide ranging inquiry. From information gathered from various sources and in consultation with persons having some apparent expertise, including former government officials, they have constructed several hypotheses concerning suspected perpetrators and participants in possible conspiracies to conduct a bombing of the Murrah Federal Office Building. Believing that intelligence agencies of the United States have information which would assist in proof of these suspicions, counsel ask this court to order wholesale production of broad categories of documents, using the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. III, §§ 1–16. Their working premise is that the Department of Justice stopped its investigation prematurely, failing to follow up on leads available in the records of the Central Intelligence Agency (CIA), the Defense Intelligence Agency (DIA) and the National Security Agency (NSA). The McVeigh team wants to search for such leads and broaden their inquiry.

Without violating the secrecy to which the defense is entitled and respecting the confidentiality of sources identified in the sealed papers, it is fair to say that the material examined *in camera* includes information about bombings as a terrorist tactic to ad-

vance various political objectives and to disrupt the social order in several parts of the world. It is suggested that those known to have used or to have encouraged the use of explosive devices for such purposes may have been involved in the Oklahoma City explosion. Counsel have observed that the possibility of foreign involvement was publicly suggested by U.S. officials immediately after the event in their announcements that all of the government's investigative resources would be applied to find those responsible for the destruction.

The lawyers for the government assert that U.S. intelligence agencies do not have documents or information of any materiality to the charges in the indictment. Nevertheless, recognizing the duty to disclose exculpatory and impeaching information established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and later cases, as well as the discovery rights of the defendants, the prosecutors informed this court at the April 9 hearing that they have requested from the CIA, the DIA, and the NSA "all material they had under *Brady,* Rule 16, and Jencks Act and any information they had which would tend to show that these defendants did not participate in the crime or that others carried out the crime." Tr. of Hearing 4/9/96 at 51. The following colloquy occurred:

> **The Court:** ... I'll simply put the question to you as the prosecutor in this case and officer of the court: Is it your position that the requests that you have made, you or others in the prosecution role have made, to the agencies referred to here in your brief are adequate to give you information that would enable you to respond appropriately under both Rule 16 and *Brady* ?
>
> **Ms. Wilkinson:** Yes, your Honor. We asked them specifically and gave them some explanation for Rule 16 material, Jencks material and *Brady* material.
>
> **The Court:** All right.
>
> **Ms. Wilkinson:** So we asked them—as I said, they're doing a very broad search. I would doubt that—I had requested and I have seen some results—that they have

produced more documents than would really qualify under that, again being careful because of the nature of this case and our request to err on the side of caution producing more documents than we think would be necessary to turn over.

> My answer is yes.
>
> **The Court:** Yes. You've made the representation, and I think that I'm entitled to rely on it.

Tr. at 94.

■ Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure permits discovery of documents containing information "material to the preparation of the defendant's defense." Direct court supervision of compliance with that rule would be very difficult in this case because the government's investigation has been extensive and an extraordinary volume of material has been produced for examination by the defendants. Likewise, for the court to determine what specific disclosures are required under *Brady* would necessitate a complete review of all of the material gathered during the government's investigation. The court does not have that duty. Indeed, the duty rests with the prosecution, for "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* — U.S. —, —, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995).

Of particular relevance here is the guidance given by the Tenth Circuit Court of Appeals in *Banks v. Reynolds,* 54 F.3d 1508, 1517 (10th Cir.1995):

> The prosecution is not required under *Brady* to "make a complete and detailed accounting to the defense of all police investigatory work on a case," *Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972), nor must the prosecutor "disclose possible theories of the defense to a defendant." *United States v.*

*Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988). It must only disclose exculpatory evidence. The exculpatory nature of particular evidence, however, "can seldom be predicted accurately until the entire record is complete." *[United States v.] Agurs,* 427 U.S. [97,] at 108, 96 S.Ct. [2392,] at 2399 [49 L.Ed.2d 342] [ (1976) ].

The prosecution will necessarily have to exercise some discretion in determining whether evidence in its possession is exculpatory, and therefore subject to disclosure under *Brady.* The prosecutor must exercise this discretion carefully, however, because he alone "can know what is undisclosed," and it is to he alone that we assign "the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." *Kyles,* [——] U.S. at [——], 115 S.Ct. at 1567. Moreover, given the prosecutor's unique role in our criminal justice system, he must resolve close cases and "doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108, 96 S.Ct. at 2399; *see Kyles,* [——] U.S. at [——], 115 S.Ct. at 1567.

The holding of that case was the reversal of a murder conviction in Tulsa, Oklahoma for the failure of the prosecution to inform the defendant that two other persons had previously been arrested for the same crime.

■ The request to follow the procedures mandated by CIPA and the implementing guidelines is premature. Nothing submitted by counsel for Mr. McVeigh under seal has been shown to be classified. There is a strong suggestion that classified information in these agency records would be helpful in pursuing the investigation of the defendant's suspicions. But CIPA does not enlarge the scope of discovery or of *Brady. United States v. Varca,* 896 F.2d 900, 905 (5th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 170 (1990). If, in complying with the duty under Rule 16 or *Brady,* government counsel must provide copies or permit inspection of documents that are now classified, they have the choices of declassifying, redacting or seeking protective orders restricting access and use of the sensitive information under CIPA.

The issue to be decided now is whether defendant McVeigh's present showing is sufficient for a court order compelling any of the requested production from these intelligence agencies. The obligation of defense counsel to investigate has been described as follows:

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities....

ABA, Standards for Criminal Justice, Standard 4–4.1. These discovery requests must be considered in that context. Defense counsel have cited *United States v. Poindexter,* 727 F.Supp. 1470 (D.D.C.1989), as persuasive precedent. There, as here, the court referred to the ordinary procedure in criminal cases of relying on the government's representations of compliance with the *Brady* obligation unless there is cause to question it because "only the government knows what evidence exculpatory to a defendant it has in its possession." *Id.* at 1485.

■ In *Poindexter* the defendant was charged with conspiracy and substantive crimes relating to concealment of certain covert activities of the National Security Council from Congress. Classified documents were directly and necessarily involved and were related to issues concerning the defendant's knowledge, intent and motive. The problem was determining the scope of the required discovery. Citing the definition of "materiality" in *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1978), Judge Harold Greene found that many of the discovery requests for other covert activities were "extraordinarily burdensome" and were "not called for without a persuasive showing of the materiality of the evidence sought." *Poindexter,* 727 F.Supp. at 1481. That same standard must now be applied here.

Defendants McVeigh and Nichols strenuously argue that there is ample reason to distrust the government's representations in this case. The prosecution's production to the defendants is ongoing and in the hearings

held to this time the court has attempted to give some definition to the scope of the duty of disclosure in this criminal proceeding. The record as it exists does not present such cause for concern that the prosecutors are not meeting their responsibilities as to now require the court intervention requested by the defendants.

■ At the April 9 hearing, Ms. Wilkinson said that the intelligence agencies were not "aligned" with the criminal investigation and did not provide information. Tr. 50–51. As she then recognized, that does not limit the duty to inquire of such agencies for information which may be exculpatory or impeaching as to the government's evidence or material to the preparation of the defense of Mr. McVeigh and Mr. Nichols. Accordingly, the prosecutors must respond to the defendants' requests for information from a broad perspective of the government as a whole.

■ This court does not function as an oversight committee to review the conduct of the government's investigation or a board of inquiry to find all the historical facts about the explosion at the Murrah Building. The objective of this criminal proceeding is to determine whether the evidence presented by the government at trial is sufficient to satisfy twelve jurors beyond a reasonable doubt that the defendants are guilty of the conduct charged and, if so, whether death is the justified penalty. The defendants may introduce contradictory and conflicting evidence. Evidence implicating others may be admitted if shown to be admissible under Rules 401, 402 and 403 of the Federal Rules of Evidence. It may also be introduced as "information" showing a "mitigating factor" in a penalty hearing under 18 U.S.C. §§ 3592 and 3593(c). If the verdict is not guilty, the jury will not be asked to decide who may have perpetrated the crime or what motivated them. In this case, all counsel and this court have the responsibility to prepare for and conduct a trial to test the quality and quantity of the evidence offered in support of the government's charges against these defendants. That is to be done without undue delay.

During the April 9 hearing Mr. McVeigh's counsel related the request for information to items identified in a motion for discovery filed on December 21, 1995. The court suggested that a proposed order be submitted for a better description of what is now being sought. Drafts of proposed orders were received, but not filed on April 24, 1996. Upon review of these proposals, and for the reasons set out above, these orders will not be entered and the submissions will remain sealed in the clerk's office as a part of the non-public record in these proceedings. It may be that defense counsel will want to submit a direct request to government counsel to search for the material described in these proposed orders as some assistance to the prosecutors in meeting their obligations under the law.

■ There is one question on which all parties have requested a ruling—the relationship between the duty to turn over exculpatory and impeachment information under *Brady* and the production of witness statements under the Jencks Act, 18 U.S.C. § 3500. The controversy concerns timing. The government has agreed that it will not delay the conduct of the trial by insisting on the statutory procedures for disclosure after the witnesses have testified on direct examination, but wants to wait to a time closer to trial. The defendants insist upon present disclosure of any statements, including grand jury testimony, that meet the *Brady* criteria. This is an open question in this circuit and there is a conflict in the opinions from other courts of appeals. This court is persuaded by the reasoning of the courts holding that *Brady* obligations are not altered or modified by the fact that the information is contained in witness statements or grand jury testimony. *United States v. Starusko*, 729 F.2d 256, 265 (3rd Cir.1984); *United States v. Poindexter*, 727 F.Supp. at 1485. What is most persuasive is that the purpose of the *Brady* duty of disclosure is to give the defendants a fair opportunity to prepare their defenses well in advance of the trial. Therefore, such statements should now be provided.

In this opinion the court has attempted to articulate the general principles controlling the questions raised in the pleadings and at the April 9 hearing. Nothing herein fore-

closes the filing of additional motions on more specific discovery and production requests.

Upon the foregoing, it is

ORDERED, that the government will turn over to the defendants all witness statements, including grand jury testimony, that are exculpatory or impeaching and in all other aspects the defendants' motions are denied.