UNITED STATES of America, Plaintiff,

v.

Timothy James McVEIGH and Terry Lynn Nichols, Defendants.

Criminal Action No. 96–CR–68–M.

United States District Court,
D. Colorado.

Jan. 28, 1997.

Patrick Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

## MEMORANDUM OPINION AND ORDER ON TIMOTHY McVEIGH'S MOTIONS TO COMPEL DISCOVERY

MATSCH, Chief Judge.

This memorandum opinion concerns the pleadings listed in the attached Appendix A. Because of the impending trial date, the focus of this opinion is on pleadings filed by Timothy McVeigh. Counsel for Terry Nichols have joined in some of Mr. McVeigh's motions and have separately filed pleadings

raising some of the same issues. While the general principles discussed will control rulings on the Nichols motions, procedural confusion can best be avoided by restricting this order to the motions filed on behalf of Timothy McVeigh.

A review of the discovery history in this case is necessary to establish perspective for consideration of these pleadings. The indictment was returned on August 10, 1995. On August 23, 1995, Judge Alley, in the Western District of Oklahoma, entered an Agreed Order (docket entry 228) regarding discovery and scheduling. Counsel soon learned that their agreed discovery plan was not realistic. Shortly after reassignment of the case, this court met with all counsel in Oklahoma City for a discovery conference. During the discussion on December 13, 1995, the court said that trial counsel for the government would be expected to speak for all government agencies involved in this matter in responding to discovery requests.

After the government attorneys said that they intended to follow an "open file" policy and not make any evaluations of exculpatory evidence, the court disapproved that approach and made the following statement regarding the duty of the prosecution:

> I don't consider that the government has met—the government counsel has met its obligations under those authorities with respect to due process by simply saying, "This is open discovery; go fish and find what you want, and if there's anything there that's exculpatory, you're welcome to it."
>
> And, you know, I think there's an affirmative duty on the part of government counsel, and to give you an illustration:
>
> I think if there's a 302 report of interview with someone and the report says, "This person knows nothing," now that, I don't think, is Brady material. I think that's simply an effort that was made and no result.
>
> On the other hand, if that report is one which contradicts information provided in another report, that's a different—that's a different question, because there the government has knowledge of contradictory

information and perhaps impeachable evidence.

> And obviously, as you get into the Giglio matters, you're talking about credibility of witnesses and the like. There is a duty for you to examine the information you have and to determine—
>
> This word "exculpatory" has been misused a lot, I think. Not here, but generally. It's like, "To be exculpatory, it has to be something that proves you're not guilty." That isn't the case. *It's something that may diminish the government's evidence and the credibility of its witnesses.*

Tr. of hearing 12/13/95 at 44–45 (emphasis added).

During a hearing on discovery issues in open court on November 13, 1996, the court added the following guidance concerning impeachment material:

> [M]y view is that late remembrance of some important detail can be exculpatory because it suggests that the person's recollection has been influenced or affected by something other than his own sensory perceptions.

Tr. of hearing 11/13/96 at 148.

Soon after the discovery conference of December 13, 1995, counsel for Mr. McVeigh filed motions for production of classified information together with motions for discovery and motions to produce exculpatory evidence. After hearing these motions on April 9, 1996, the court entered a Memorandum Opinion and Order on Motions for Production of Classified Information on April 29, 1996, now reported as *United States v. McVeigh,* 923 F.Supp. 1310 (D.Colo.1996). The court expressly adopted the guidance given by the Tenth Circuit Court of Appeals in *Banks v. Reynolds,* 54 F.3d 1508, 1517 (10th Cir.1995), reminding the prosecutors that they must exercise their own judgment to determine whether evidence in the government's possession is exculpatory and subject to disclosure under *Brady.* The court accepted and relied upon the representations made by government counsel at the April 9 hearing that they had requested information from the Central Intelligence Agency, the Defense Intelligence Agency and the National Security

Agency to enable counsel to comply with *Brady,* Rule 16 and the Jencks Act. Finding that the record presented at the time of the April 9, 1996 hearing, including certain *ex parte* submissions of counsel for Mr. McVeigh, did not present such cause for concern that the prosecutors were not then meeting their responsibilities as to require the type of direct intervention requested by the defense, this court said:

> This court does not function as an oversight committee to review the conduct of the government's investigation or a board of inquiry to find all the historical facts about the explosion at the Murrah Building. The objective of this criminal proceeding is to determine whether the evidence presented by the government at trial is sufficient to satisfy twelve jurors beyond a reasonable doubt that the defendants are guilty of the conduct charged and, if so, whether death is the justified penalty. The defendants may introduce contradictory and conflicting evidence. Evidence implicating others may be admitted if shown to be admissible under Rules 401, 402 and 403 of the Federal Rules of Evidence. It may also be introduced as "information" showing a "mitigating factor" in a penalty hearing under 18 U.S.C. §§ 3592 and 3593(c). If the verdict is not guilty, the jury will not be asked to decide who may have perpetrated the crime or what motivated them. In this case, all counsel and this court have the responsibility to prepare for and conduct a trial to test the quality and quantity of the evidence offered in support of the government's charges against these defendants. That is to be done without undue delay.

*United States v. McVeigh,* 923 F.Supp. at 1315.

Discovery was ongoing at the time of that order and it has continued as the parties have proceeded to prepare for trial. Separate trials have been ordered. The trial of Timothy McVeigh will begin on March 31, 1997. On August 30, 1996, Mr. McVeigh filed docket entry 1963, Defendant McVeigh's Motion to Compel Production of Exculpatory Evidence, Report to the Court and Brief in Support of the Motion to Compel. After first acknowledging that a massive amount of discovery material was received from government counsel, and that much had been accomplished through direct negotiations, Mr. McVeigh's counsel asked the court to resolve the issues described at length in 83 pages of the motion.

Because many of the defense requests were phrased broadly, the court directed additional pleadings to put the disputes into sharper focus. The multiple docket entries identified in the appendix to this memorandum opinion evidence the extensive efforts of the parties to comply with that directive. The sealed filings must remain sealed to protect against premature public disclosure of discovery information, recognizing that much of the material will not be admissible in evidence and the testimony of potential witnesses may be affected by the publication of these exchanges between the lawyers for the parties.

Both the government and defendant McVeigh have made *ex parte* submissions of their respective views as to the materiality of some of the disputed requests. After the open hearing on November 13, 1996, *in camera* hearings were held in chambers on November 14, 1996, and on January 8 and 9, 1997.

The government's written responses provided much information; denied knowledge of the existence of much of what was requested; objected to the phrasing of some requests as overbroad; denied the materiality of much of what was asked for and complained that the search for the information sought by some of the requests was burdensome. Most of the specific disputes were decided by oral rulings in the course of the hearings. During the hearing on January 9, counsel for Mr. McVeigh asked the court to reserve decision on certain requests and to consider them in the context of the papers submitted *ex parte.* The papers were filed *ex parte* to protect attorney work product and to avoid revealing possible defense strategy and tactics to the government. The prosecutors did not object to this procedure, relying on the court's assurance that it would not order additional disclosures without first

giving the government an opportunity to respond further at another *in camera* hearing. The court has reviewed these filings and declines to order production on these particular requests based on the reasoning in this opinion.

Counsel for defendant McVeigh also asked for a general order instructing government counsel to transmit the requests for information as enumerated in docket entry 2768, phrased by defense counsel, to the government agencies designated by defense counsel and to other agencies reasonably likely to possess responsive information, and to require the appropriate officials in those agencies to submit affidavits either confirming or denying the existence of such information and material in the possession of such agencies together with sworn summaries of the techniques and procedures employed by the agencies in complying with the court order. The McVeigh motion asks that the court order delivery of the responsive information and material to the Clerk of the Court, under seal, and forward copies to the prosecutors who must disclose the information to designated defense representatives or, in the alternative, move to invoke the provisions of the Classified Information Procedures Act, 18 U.S.C.App. III, §§ 1–16, to contest the admissibility, relevance and/or form of any disclosures. In short, Mr. McVeigh wants the court to bypass the government's trial lawyers and give his lawyers the equivalent of direct access to the files and records of most of the law enforcement and intelligence agencies of the United States Government.

The duty of counsel for the accused to conduct a thorough factual investigation and search for all plausible lines of defense was described in the Memorandum Opinion and Order on Media Motions. *United States v. McVeigh*, 918 F.Supp. 1452, 1459 (W.D.Okla. 1996). Pursuant to 21 U.S.C. § 848(q), the court continues to support that effort by providing the resources requested by defense counsel. Payment has been authorized for additional counsel, investigators, consultants, and forensic specialists, together with attendant costs and expenses, enabling the defense to pursue a wide-ranging investigation independently of that done by the government.

As required by the authorizing statute, the approvals were obtained in *ex parte* proceedings. To maintain neutrality and avoid any appearance of alignment with the defense, the court has made no effort to evaluate the credibility or determine the significance of these submissions, and has consistently relied on the experience and integrity of defense counsel, accepting their representations that such resources are reasonably necessary in preparing for the trial defense of Mr. McVeigh. There is no requirement that defense counsel show that admissible evidence will result from these investigatory efforts.

Mr. McVeigh's lawyers say that the order to transmit their written requests directly to the relevant agencies is necessary to complete their investigation because they believe that the attorneys appearing for the government in this case have not made adequate inquires to obtain all available information relating to the destruction of the Alfred P. Murrah Building and revealing those who were responsible for it. They also suggest that the agencies have not and will not provide the requested information, even to the government's lawyers, without such a court order. In short, the assertion is that the government's criminal investigation is incomplete and defense counsel must have this access to the government's resources to complete their own investigation and trial preparation. The court's authority to enter such an order is said to be found in the power to supervise discovery under Fed.R.Crim.P. 16 and to ensure compliance with *Brady.*

An earlier motion for disclosure of information collected by intelligence gathering agencies was considered and rejected in the previously cited Memorandum Opinion and Order on Motions for Production of Classified Information. *United States v. McVeigh*, 923 F.Supp. 1310. There, the court was satisfied that the prosecutors were aware of their obligation to respond to defense requests for discovery under Fed.R.Crim.P. 16 and to disclose exculpatory information under the *Brady* doctrine from the broad perspective of the government as a whole. The record at that time did not warrant any court intervention in the process. The McVeigh lawyers have cited that earlier opinion and

argue that the court can no longer rely on the government's representations.

Defense counsel have made it clear that this call for court intervention is not based on any suggestion that the prosecutors have been deceitful or are acting in bad faith. The expressed concern is that they have failed to recognize the full scope of the obligation to provide information to the defense upon requests made under Rule 16 and as required by *Brady*. After reviewing the papers submitted under the cited docket entries and the hearing transcripts, the court has a larger and overriding concern that the complexity of this case has generated some confusion about the applicable law and the institutional roles of counsel and the court. The confusion is compounded by the tendency to conflate the discovery available to a defendant upon request under Rule 16 with the constitutional duty to disclose exculpatory information to the defense. The purpose of this opinion is to eliminate that confusion, clarify the existing record and give guidance for future conduct in the preparation and trial of the charges against Mr. McVeigh.

Rule 16(a)(1)(C) reads as follows:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. 16. It is notable that in the 1966 version of this rule, the defendant was required to show that his request was reasonable. The Advisory Committee note explained that the requirement of reasonableness permits the court to define and limit the scope of the government's obligation to search its files. The reasonableness limitation was removed in the 1974 Amendment with the following comment from the Advisory Committee:

The old rule requires a "showing of materiality to the preparation of his defense and

that the request is reasonable." The new rule requires disclosure if any one of three situations exists: (a) the defendant shows that disclosure of the document or tangible object is material to the defense, (b) the government intends to use the document or tangible object in its presentation of its case in chief, or (c) the document or tangible object was obtained from or belongs to the defendant.

Disclosure of documents and tangible objects which are "material" to the preparation of the defense may be required under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), without an additional showing that the request is "reasonable." In *Brady* the court held that "due process" requires that the prosecution disclose evidence favorable to the accused. Although the Advisory Committee decided not to codify the *Brady* Rule, the requirement that the government disclose documents and tangible objects "material to the preparation of his defense" underscores the importance of disclosure of evidence favorable to the defendant.

Limiting the rule to situations in which the defendant can show that the evidence is material seems unwise. It may be difficult for a defendant to make this showing if he does not know what the evidence is. For this reason subdivision (a)(1)(C) also contains language to compel disclosure if the government intends to use the property as evidence at the trial or if the property was obtained from or belongs to the defendant.

Fed.R.Crim P. 16 advisory committee's note to 1974 Amendment.

The defendant may also request and obtain discovery of any of his written or recorded statements under subsection (A); his prior criminal record under subsection (B); reports of scientific tests or experiments under subsection (D) and summaries of the expected testimony of expert witnesses the government intends to use at trial under subsection (E).

Rule 16(a)(2) excludes the following kinds of information from disclosure under the discovery rule.

> Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or perspective government witnesses except as provided in 18 U.S.C. § 3500.

In *United States v. Armstrong,* —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), the Supreme Court rejected an argument that the rule required production of documents relevant to the defendant's claim of selective prosecution on the contention that the word "defense" includes any claim that "results in nonconviction" if successful. The Court found a significant symmetry between the phrases "material to the preparation of the defendant's defense" and "intended for use by the government as evidence in chief at the trial." Reading them in the context of the exemptions in Rule 16(a)(2), the Court held that "defense" means only defenses "in response to the Government's case-in-chief." *Id.* at ——, 116 S.Ct. at 1485. Although concurring justices sought to limit the ruling to a selective prosecution claim, the Court's opinion is an authoritative interpretation of the language of the discovery rule.

■ No affirmative defenses have been raised in this case. Accordingly, *Armstrong* does not limit Rule 16 discovery in this case. Timothy McVeigh's not guilty pleas put in issue all of the essential elements of each charge in the indictment. There can be no question that the Murrah Building was destroyed and that deaths and injuries occurred in some type of explosion on April 19, 1995. At trial, the government will attempt to prove that Timothy McVeigh participated in a plot to bomb the building and acted to carry out that scheme in the manner charged in the indictment. The government seeks a jury recommendation for a sentence of death

pursuant to 18 U.S.C. § 3593. Under § 3592(a) "minor participation" is a mitigating factor and non-prosecution of equally culpable participants may be an additional mitigator. Accordingly, anything tending to show involvement of persons other than or in addition to Timothy McVeigh may be material to his defense.

The indictment in this case refers to participation of unnamed additional persons in the crimes charged to Timothy McVeigh and Terry Nichols. The conspiracy count expressly charges their agreement with other persons unknown to the grand jury and each of the substantive counts includes accusations that the defendants aided, abetted and caused the commission of those crimes. The actions of other persons, including a co-defendant, may be relevant at trial of the culpability issues, including the possibility that they influenced a particular defendant to become an unwilling or unwitting participant in criminal conduct.

The obligation to provide the defense in a criminal case with "exculpatory" information is generally referred to as the *Brady* doctrine because of the holding of the Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), articulated by Justice Douglas:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196–97. The doctrine was applied to testimonial impeachment information in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The root of the doctrine is the requirement of fundamental fairness implicit in the due process clauses of the Fifth and Fourteenth Amendments. There has been an evolution and refinement of the core concept of "materiality" in subsequent cases, well described in the opinion of the Tenth Circuit Court of Appeals in *Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986). In that case, murder convictions and a death sentence were set aside by the grant of a petition for habeas corpus on the conclusion that the prosecution failed to

comply with *Brady.* The appellate court affirmed the district court's findings that information concerning an alternative suspect in the files of the Oklahoma City Police Department, and known to the prosecuting attorneys, when combined with other information which was available upon inquiry of authorities in South Carolina, where that suspect lived, was sufficient to create a reasonable doubt about the eyewitness testimony supporting the verdict. The court applied the standard for materiality announced in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and also applied the test established by *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Significantly, the appellate court charged the prosecution with knowledge that it may not have had, but could have easily obtained and, in addition, included possible further investigation by the defense in finding that the undisclosed information met the materiality standard. The court said:

> As the State has reminded us, a *Brady* inquiry is grounded in an "overriding concern with the justice of the finding of guilt." *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401. On the state of the evidence, the Lee Crowe material creates reasonable doubt that Bowen committed the Guest House murders. Additionally, in the hands of the defense, it could have been used to uncover other leads and defense theories and to discredit the police investigation of the murders.

*Bowen v. Maynard,* 799 F.2d at 612.

■ Whether any particular matter is exculpatory must be determined within the context of the government's evidence taken as a whole. The court does not have that context before trial and it is not in a position to decide disputed items upon *ex parte* submissions. It is appropriate, as has been done here earlier, to review redacted papers provided by the prosecution and compare them with the original versions to decide the fairness and propriety of the excisions. That process is qualitatively different from defense counsel submitting *ex parte* filings of their hypotheses and asking for findings that the requests are likely to produce material information.

All criminal cases begin with the actions of law enforcement agencies exercising discretion in the course and scope of their investigations of physical evidence and information from the crime scene and persons having relevant information. These are historical inquires: attempts to recreate what happened at a particular time and place. When that event involves the death and destruction associated with the apparent bombing of this federal office building, the scope of the investigation is necessarily very broad, requiring participation by multiple governmental investigating agencies and attracting the attention of the public and news gathering organizations. No less an authority than the President of the United States condemned the crime and called for an all-out effort to locate and prosecute those responsible for it. The investigatory efforts of the government and the defense have been pursued in the context of widespread publicity. News gathering organizations have utilized the resources available to them in their own investigations. The resulting publications may give rise to further official inquiries.

The task of the prosecution is to collect and collate the information developed during the investigation and to construct a coherent interpretation of it, forming a narrative explaining what happened, who was involved and why the perpetrators acted as they did. The prosecutors must then sort out what can be supported by admissible evidence from what is suspected, but not provable, and then define their case by writing the indictment. Due process requires them to give fair notice to the accused of what the government intends to prove. It also requires fairness in the methods of proof, using the rules of evidence. Trial advocates must adhere to professional ethics. The accused must be afforded the protection of effective assistance of counsel. And, finally, evidence must be presented to a fair-minded jury under the adversary system of trial.

■ There is no requirement that the government present all of the information known to it that can meet the requirements for admissible evidence. The prosecutors may be selective and use only that which they believe will have persuasive effect on the

jury. What they may not do is suppress or secrete information known to them which does not fit into the narrative, or which contradicts the evidence used to support that narrative, or which may diminish the credibility of the evidence relied on to tell the story. Stated simply, the prosecutors must not present proof of an historical narrative that they know not to be true. They must disclose to the defense the information known to or available to them which may develop doubt about the truth of the government's narrative.

In its most recent opinion applying the *Brady*. doctrine, the Supreme Court emphasized the prosecutor's duty to become informed about available information and to evaluate the cumulative effect of all evidence withheld from the defendant. *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In describing materiality, the Court said:

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Id.* at ——, 115 S.Ct. at 1566.

The Court put responsibility for compliance with *Brady* squarely on the prosecutor in this passage:

> While the definition of *Bagley* materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. *This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.*

> But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady,* 373 U.S., at 87, 83 S.Ct., at 1196–1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

*Id.* at —— ——, 115 S.Ct. at 1567–68 (emphasis added). The Court cited the Tenth Circuit's *Bowen* opinion as an example of the potential use of undisclosed information by a defendant's lawyer in attacking the reliability of the police investigation.

■ The Constitution does not require the government's lawyers to defend against the evidence they present or to take affirmative action to prepare a defense for the accused. While the prosecutors must reveal what they know to be the weaknesses in their case, they are not required to direct a counter-investigation to destroy it.

The differences between discovery available upon request from the defendant under Rule 16 and the prosecutor's duty to disclose exculpatory information under *Brady* are important, both in determining what the government must produce and in the procedure to be followed in so doing. Rule 16 is applicable only when the defendant chooses to invoke it by making a request. Compliance with such a request triggers the defense obligation to provide reciprocal discovery under Rule 16(b). Both parties are then under a continuing duty to disclose any additional evidence or material as they discover it. Rule 16(c). Disputes about rule discovery are brought to the court by a motion for a protective order under Rule 16(d)(1) or a motion to compel or for sanctions under Rule 16(d)(2). Rule 12(b)(4) requires requests for Rule 16 discovery to be made before trial and the court may control the timing of discovery motions under Rule 12(c).

■ There is no established procedure for the due process disclosures required by *Brady*. The information should be given to the defense as it becomes known to the government, since the information and material must be available to the defense in sufficient time to make fair use of it. Generally, *Brady*

violations first come before a court after the trial and the court may then consider the materiality of what was suppressed or omitted from disclosures made, in the context of the complete trial record. Indeed, it is not possible to apply the materiality standard in *Kyles* before the outcome of the trial is known.

There have been special circumstances requiring a trial court to rule on a *Brady* question before trial. In cases involving charges of criminal conduct by persons exercising the authority of government officers with responsibility for national security, trial judges have directed special discovery procedures because of special circumstances. Broad language in those opinions has been cited by defense counsel in support of the procedure proposed here. For example, in *United States v. North,* 698 F.Supp. 322 (D.D.C.1988), and *United States v. Poindexter,* 727 F.Supp. 1470 (D.D.C.1989), defendants' access to classified information, using the Classified Information Procedures Act (CIPA), was necessary. The defendants were permitted to show materiality of documents in *ex parte* hearings. Congress passed CIPA for the express purpose of making such prosecutions possible when sensitive matters are inherently involved.

In a rare case, a trial judge's refusal to examine a CIA file, *in camera,* resulted in reversal of a conviction. *United States v. Diaz–Munoz,* 632 F.2d 1330 (5th Cir.1980). There, the defense of income tax and fraud charges was that the funds involved were from the CIA, the CIA file went directly to that issue, the judge had been told that the CIA had such a file, and he had refused to require its production to him to determine its materiality during the trial.

▮▮▮▮ Application of the *Brady* doctrine to this case is especially difficult because the scope of inquiry is so broad and the information gathering capability of all government agencies is so great. The lawyers appearing on behalf of the United States, speaking for the entire government, must inform themselves about everything that is known in all of the archives and all of the data banks of all of the agencies collecting information which could assist in the construction of alternative scenarios to that which they intend to prove at trial. That is their burden under *Brady.* They must then disclose that which may be exculpatory under the materiality standard of *Kyles.* The government has objected to some of Mr. McVeigh's requests as "burdensome." That is not a proper objection. The failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance or delay. Determining materiality of information discoverable under Rule 16 or required to be produced under *Brady* must not be made according to a cost benefit analysis.

▮▮▮▮ The difficulty with determining materiality of information regarding other possible suspects in this case is compounded by the character of the crimes charged. Bombings and hate crimes have become common occurrences throughout the world. Terrorist organizations, large and small, with a myriad of motivations, have publicly identified themselves with such actions in many countries. In providing for the security of their citizens, governments have necessarily collected information about such groups and individuals within them. There is no doubt that intelligence agencies of the United States have considerable stores of information with a wide range of credibility and of varying value in pursuing investigations of particular crimes. In the course of the *in camera* hearings on these motions to compel, the government lawyers have described how burdensome and time consuming the searches of agency data are when the requests are as broadly phrased as those given to them by the defense. Requests under Rule 16 must be sufficiently clear to inform the prosecution about what is sought. Such specificity is not required for a suggestion that the prosecutors consider the defendant's information in pursuing their duty to be informed under *Brady.* Due process requires the government lawyers to resolve their doubts in favor of disclosure.

▮▮▮▮ The word "information," as used in this opinion, means anything said or written, without regard for its reliability, credibility or provability. Whether such information

has any value for the defense under not guilty pleas depends upon assessments of sources; the facial plausibility of the statement itself; any verification or corroboration provided by other information, including physical evidence; the saliency of the statement; the relevance or "fit" of it in the historical narrative and many other factors of variable significance. In short, the materiality of information depends upon the judgment of persons having knowledge of all of the other information necessary for evaluation of it. The trial judge does not have that knowledge before trial. The government lawyers may also lack some necessary information known to the defendant's lawyers. Accordingly, to expect a reliable response, defense counsel must be willing to provide what is known to them that may affect this evaluation. Mr. McVeigh's attorneys have not been willing to do that, relying on claims of privilege.

 There is an obligation of fairness required of defense counsel in making requests for information from the government. These requests must be sufficiently clear and directed to give reasonable notice about what is sought and why the information may be material in the case. To the extent that materiality may depend upon something that only the defendant knows, the Fifth Amendment privilege against self-incrimination must, of course, be protected. Beyond that, the basis for refusal is not apparent. There is no attorney work product in factual information provided to the lawyer. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil 2d* § 2023, at 330–34 (1994). The defense is also obligated to provide reciprocal discovery under Rule 16(b). That provision permits government discovery of defense materials upon compliance with the defense requests. The court understands that the McVeigh defense lawyers have been providing information upon request by the government.

 The complexities of this case make it understandable that counsel for both parties want the court to function as an intermediary looking at their respective *ex parte* submissions to referee their disagreements about materiality and supervise the exchange of information. As previously explained, that is not the judicial role. Rule 16(d)(1) does give the court the authority to grant a protective order denying, restricting or deferring discovery upon a proper motion. Rule 16(d)(2) provides the authority to enter orders compelling compliance with the rule or imposing sanctions for the failure to do so. In this respect, the court's role is different when the requests are made under Rule 16 as compared with the *Brady* doctrine. There is no established procedure for the court to participate in *Brady* production. In limited instances, as in determining what may be considered as impeachment, the court has resolved the issue after hearing both parties. Additionally, special circumstances may present particular questions as noted in the cases cited in this opinion.

Rule 16(c) expressly imposes a continuing duty of disclosure on both parties participating in discovery and *Brady* requires the government to provide exculpatory information after it has become known to the government and in time for the defense to make use of it.

 The continuing duty of discovery on request under Rule 16(c) and the constitutional mandate to be informed of and produce exculpatory information and material under *Brady* make discovery a dynamic process and preclude any adjudication that there has been adequate compliance at any time before trial or, indeed, during trial, when, as here, both parties are conducting ongoing investigations. Therefore, the oral rulings made by this court should not be interpreted as any final adjudications of the disputes presented. The government must not take comfort in those rulings and the McVeigh defense is not precluded from pursuing some of the same information involved in these requests by reforming them and providing to government counsel such information as may be necessary to clarify ambiguities, provide focus and give support for a determination of materiality as it has been defined in this opinion.

A fair trial is the constitutional imperative. Achieving that objective requires good faith and responsible conduct by competent trial advocates on both sides. Cooperation in a search for truth is not inconsistent with zeal-

ous advocacy. More information becomes known as counsel prepare for trial. There is a continuing duty of disclosure both under Rule 16 and *Brady*. The court expects counsel for both parties to review their positions and adjust them according to the definitions and guidance provided to them in this opinion.

Upon the foregoing, it is

ORDERED that the parties will proceed according to the views expressed in this opinion and that any future filings by either the government or Mr. McVeigh shall be made pursuant to the provisions in Rule 16(d) or, government motions to invoke the provisions of the Classified Information Procedures Act, or such other motions as may be necessary for trial preparation.

## Appendix A

| Filing Date | Docket Entry | Title |
| --- | --- | --- |
| 8/22/96 | 1898 | Defendant McVeigh's Motion to Compel Production of Additional Intelligence Information and Memorandum to the Court Concerning Violation of the Government's Duty to the Defendant Under *Brady* and This Court's Order of April 29, 1996, Respecting National Intelligence Information (Under Seal) |
| 8/27/96 | 1918 | Defendant McVeigh's Motion to Compel the Production of Material and Exculpatory Classified Information Pursuant to Rule 16 and *Brady* |
| 8/27/96 | 1921 | SEALED Appendix—Volume I |
| 8/27/96 | 1922 | SEALED Appendix—Volume II |
| 8/27/96 | 1923 | SEALED Appendix—Volume III |
| 8/27/96 | 1926 | Defendant McVeigh's Notice of Intention to Disclose Classified Information Pursuant to the Classified Information Procedures Act (Under Seal) |
| 8/27/96 | 1929 | Defendant McVeigh's Second Supplemental Specification of Materiality of Requested Classified Information (*Ex Parte* and Under Seal) |
| 8/29/96 | 1936 | Defendant McVeigh's Supplemental Memorandum to the Court Regarding Motion to Compel Production of National Intelligence Information (Under Seal) |
| 8/29/96 | 1938 | Response of the United States To McVeigh's Motion to Compel Production of Brady Material (Under Seal) |
| 8/30/96 | 1939 | Defendant McVeigh's Motion for Production of "Identification" Discovery Pursuant to Rule 16 and *Brady* |
| 8/30/96 | 1942 | SEALED Separately Bound Appendix to Defendant McVeigh's Motion for Production of "Identification" Discovery Pursuant to Rule 16 and *Brady* |
| 8/30/96 | 1943 | Defendant McVeigh's Motion Pursuant to 16(a)(1)(C), (D), and (E) for Production of Reports of Examinations and Tests and Underlying Data, Methodologies and Protocols |
| 8/30/96 | 1946 | SEALED Appendix to Defendant McVeigh's Motion Pursuant to 16(a)(1)(C), (D), and (E) for Production of Reports of Examinations and Tests and Underlying Data, Methodologies and Protocols |
| 8/30/96 | 1948 | Defendant McVeigh's Motion to Compel Pre-trial Production of Jencks Material and Brief in Support |
| 8/30/96 | 1956 | Defendant McVeigh's Motion Pursuant to Rule 16 for Discovery and Inspection, with Supporting Authority |
| 8/30/96 | 1957 | Sealed Appendix to Defendant McVeigh's Motion Pursuant to Rule 16 for Discovery and Inspection, with Supporting Authority |
| 8/30/96 | 1959 | SEALED Appendix to McVeigh Motion Pursuant to Rule 16 for Discovery and Inspection, with Supporting Authority |
| 8/30/96 | 1962 | Defendant McVeigh's Supplemental Motion to Require the Government to Produce Exculpatory Evidence (Under Seal) |

| Filing Date | Docket Entry | Title |
|---|---|---|
| 8/30/96 | 1963 | Defendant McVeigh's Motion to Compel Production of Exculpatory Evidence, Report to the Court and Brief in Support of the Motion to Compel |
| 8/30/96 | 1966 | SEALED Appendix to Defendant McVeigh's Motion to Compel Production of Exculpatory Evidence, Report to the Court and Brief in Support of the Motion to Compel. |
| 9/3/96 | 1969 | Affidavit of Stephen Jones in Further Support of Motion to Compel Release of National Intelligence Data, Third Supplementation of Specification of Materiality and Relevance (*Ex Parte* and Under Seal) |
| 9/12/96 | 1971 | Defendant McVeigh's Errata Sheet to Motion Pursuant to Rule 16 for Discovery & Inspection |
| 9/4/96 | 1990 | Defendant McVeigh's Reply to the Government's Response to McVeigh's Motion to Compel Production of *Brady* Material (Under Seal) |
| 9/16/96 | 2079 | Errata Sheet to Defendant McVeigh's Supplemental Motion to Require the Government To Produce Exculpatory Evidence (Under Seal) |
| 9/16/96 | 2081 | Response of the United States to McVeigh's Discovery Motions |
| 9/23/96 | 2154 | Sealed Motion of the United States to Unseal, as to the United States, Certain Ex Parte Submissions By Counsel for Defendant McVeigh |
| 9/30/96 | 2175 | Defendant McVeigh's Supplemental Discovery Requests for National Intelligence Information (Under Seal) |
| 9/30/96 | 2184 | Defendant McVeigh's Response to Motion of the United States to Unseal Certain Ex Parte Submissions (Under Seal) |
| 9/30/96 | 2185 | Defendant McVeigh's Reply to Government's Response to Identification Discovery |
| 9/30/96 | 2186 | Defendant McVeigh's Reply to the Response of the United States to McVeigh's Discovery Motions (This Reply Addresses the Government's Response to McVeigh's Request for National Security Intelligence Data) |
| 10/1/96 | 2191 | Defendant McVeigh's Fourth Supplemental Specification of Materiality of Requested Classified Information (*Ex Parte* and Under Seal) |
| 10/1/96 | 2197 | Defendant McVeigh's Reply to the Response of the United States Government To McVeigh's Discovery Motions |
| 10/10/96 | 2265 | Defendant McVeigh's Amended Motion to Compel the Production of Material and Exculpatory Classified Information Pursuant to Rule 16 and *Brady* (Supplemental Requests) (Under Seal) |
| 10/18/96 | 2331 | Response of the United States to McVeigh's Amended Motion to Compel Production of Classified Information |
| 10/18/96 | 2332 | APPENDIX to Response of the United States to McVeigh's Amended Motion to Compel Production of Classified Information (3 volumes) |
| 10/23/96 | 2365 | McVeigh's Narrowed Discovery Requests for Examinations, Tests, Experiments, Methodologies and Protocols for Expert Witnesses |
| 10/23/96 | 2366 | Defendant McVeigh's Narrowed Rule 16 Motion |
| 10/23/96 | 2369 | Sealed Appendix to Defendant McVeigh's Narrowed Rule 16 Motion |
| 10/23/96 | 2370 | Defendant McVeigh's Narrowed Motion to Compel Production of Exculpatory Evidence |
| 10/23/96 | 2373 | Sealed Appendix to Defendant McVeigh's Narrowed Motion to Compel Production of Exculpatory Evidence |
| 10/31/96 | 2403 | Defendant McVeigh's Statement of Materiality and Specificity with Respect to His Amended Motion to Compel the Production of Material and Exculpatory Classified Information Pursuant to Rule 16 and *Brady* (Supplemental Requests) |

| Filing Date | Docket Entry | Title |
|---|---|---|
| 10/31/96 | 2406 | McVeigh Fourth Supplement of Specification of Materiality of Requested Classified Information (*Volume II*) (*Ex Parte* and Under Seal) |
| 11/7/96 | 2475 | Response of United States to Defendant McVeigh's "Narrowed" Motion to Compel Production of Exculpatory Evidence |
| 11/7/96 | 2477 | Response of the United States to the McVeigh's "Narrowed" Requests for Expert Witness Discovery |
| 11/7/96 | 2478 | Response of United States to Defendant McVeigh's "Narrowed" Rule 16 Motion |
| 11/8/96 | 2482 | Defendant McVeigh's Fifth Supplemental Specification of Materiality of Requested Classified Information (*Ex Parte* and Under Seal) |
| 11/12/96 | 2490 | Defendant McVeigh's Supplemental Discovery Requests for Classified Information (Under Seal) |
| 11/21/96 | 2533 | Defendant McVeigh's Supplemental Discovery Requests for Classified Information (Under Seal) |
| 11/27/96 | 2592 | Defendant McVeigh's Memorandum Concerning the Court's November 22, 1996 Order to the Government To Respond to Defendant McVeigh's Discovery Requests (Under Seal) |
| 12/11/96 | 2649 | Memorandum to the Court Concerning Discovery of Classified Information (Under Seal) (McVeigh) |
| 12/11/96 | 2650 | Response of United States to Defendant McVeigh's Supplemental Discovery Requests for Classified Information (Under Seal) |
| 12/27/96 | 2763 | Defendant McVeigh's Supplemental Memorandum to the Court Outlining the Relevance and Materiality of Newly Discovered Information from the Philippines, Israel and the Middle East and Its Relevance to the McVeigh Defense (*Ex Parte* and Under Seal) |
| 12/30/96 | 2768 | Defendant McVeigh's Supplemental Motion to Compel the Production of Information in the Possession of the Intelligence Agencies of the United States and Enumerated Discovery Requests. (Under Seal) |
| 1/6/97 | 2816 | Response of the United States to McVeigh's Memorandum to the Court Concerning Discovery of Classified Information (Under Seal) |